**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| Erin Shaw,<br><br>      Plaintiff,<br><br>v.<br><br>Doctors Credit Service, Inc.,<br><br>      Defendant. | Case No. 1:23-cv-699<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE OHIO CONSUMER SALES PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Erin Shaw ("Erin"), is a natural person who resided in Franklin, Ohio, at all times relevant to this action.

2. Defendant, Doctors Credit Service, Inc. ("DCS"), is an Ohio corporation that maintained its principal place of business in Vandalia, Ohio, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq. ("OCSPA") because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

1

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

**STATEMENT OF FACTS**

6. At all times relevant to this action, DCS collected consumer debts.

7. DCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of DCS's revenue is debt collection.

9. DCS meets the definition of a "supplier" as defined by Ohio Rev. Code § 1345.01(C). *See Midland Funding L.L.C.. V. Brent, 644 F.Supp2d 961, 976 (N.D. Ohio 2009)(citing cases).*

10. As described, *infra*, DCS contacted Erin to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Erin is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. On July 26, 2007, the Ohio Secretary of State notified DCS that due to failure to file tax reports or pay taxes, the Secretary of State cancelled DCS's articles of incorporation/certificate of authority.

14. In March 2020, Erin was evicted from her home. In April 2020, Erin required two brain surgeries. Though she has since recovered, due to these events, Erin is disabled and has limited documentation and memory of events before and around her surgeries.

15. On June 27, 2023, at 11:20 AM, a representative of DCS first contacted Erin via telephone in attempt to collect an alleged debt (hereinafter the "Initial Communication").

16. Erin noted the representative's name as "Mr. Harris."

17. Erin informed Mr. Harris of her unfortunate situation to explain that she didn't have many documents and she still has trouble recalling information from previous years.

18. Erin requested documentation and validation of the alleged debt.

19. Instead of providing the requested information to Erin orally in the initial communication as required by 12 CFR § 1006.34(a) ("Regulation F"), or letting Erin know validation and dispute information would be forthcoming via mail pursuant to 15 U.S. Code § 1692g, Mr. Harris rudely told Erin that he would not provide her any documents.

20. Mr. Harris advised Erin that pursuant to HIPPA, any information provided to her would be heavily redacted and nonsensical.

21. Mr. Harris taunted Erin that he could access and see her medical information, but refused to provide information or documentation to her.

22. Upon further entreating by Erin, Mr. Harris reiterated to Erin that DCS would not provide any proof or information about the alleged debt.

23. Mr. Harris told Erin that she could pursue information by contacting the original creditor.

24. Instead of agreeing to validate the alleged debt, Mr. Harris proceed to berate Erin that she bore the blame for lacking information and documentation regarding the alleged debt.

25. After another request by Erin, Mr. Harris told her that she made a payment in 2018, but that DCS would not provide any documents to her.

26. During the telephone call, Mr. Harris became verbally aggressive with Erin, accused her of bearing the fault for lack of documentation, and eventually began to talk loudly over Erin.

27. Erin disconnected the Initial Communication because she was unable to communicate with Mr. Harris' verbal discordance.

28. After the Initial Communication, Erin began an exhaustive search of her belongings and the records that she maintained.

29. On June 29, 2023, DCS contacted Erin via telephone in attempt to collect an alleged debt.

30. Erin noted the representative's name as "Mr. Anderson."

31. Mr. Anderson told Erin that DCS would provide receipt of payment to the original creditor showing a remaining balance.

32. Erin's requests to DCS's representatives during the two telephone calls were similar in nature and she cannot be sure why her request for validation was later granted after being initially refused.

33. On June 30, 2023, Erin received a receipt of payment to Huey & Weprin from 2018.

34. DCS's collection efforts with respect to the debt caused Erin to suffer concrete and particularized harm, *inter alia*, because the FDCPA provides Erin with the legally protected right not to be misled or treated unfairly with respect to any action for the collection of any consumer debt.

35. DCS's deceptive, misleading, and unfair representations and omissions with respect to its collection efforts were material misrepresentations that affected and frustrated Erin's ability to intelligently respond to DCS's collection efforts because Erin could not adequately or informatively respond to DCS's demand for payment of the debt.

36. When a debt collector fails to effectively inform the consumer of their rights and legal status of their debts, in violation of statutory law, the debt collector has harmed the consumer.

37. Erin's failure to pay the debt partially arose from the rude and confusingly inconsistent telephone calls because Erin believed they were attempts to collect inaccurate or improper monies.

38. Erin was uncertain about the legitimacy of the telephone calls and misled to her detriment by the statements and omissions in the Initial Communication, and Erin relied on the content of the Initial Communication to her detriment.

39. Erin would have pursued a different course of action were it not for DCS's violations.

40. Because of DCS's actions, the funds Erin could have used to pay the alleged debt were spent elsewhere.

41. In reliance on the Initial Communication, Erin expended time and money in an effort to mitigate the risk of future financial harm in the form of dominion and control over her funds.

42. As a result of DCS's deceptive, misleading, unfair, unconscionable, and false debt collection practices, Erin has been damaged.

## ARTICLE III STANDING

43. Erin has Article III standing to bring her FDCPA claim because DCS's communications in attempt to collect an alleged debt constitute an unwanted intrusion upon her solitude, seclusion, and peace and quiet, which are common law analogues to the FDCPA violations asserted below. *See Vazzano v. Receivable Mgmt. Servs., LLC,* 621 F. Supp. 3d 700, 709 (N.D. Tex. 2022) (receiving an unwanted letter "has a 'close relationship' to the type of harm protected by the common law tort of intrusion upon seclusion (protecting against intrusion into private solitude)) (citing *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2204 (2021)) (also citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy.")).

44. Moreover, the emotional distress Erin experienced is a sufficient concrete injury to establish Article III standing. See *Mayfield v. LTD Fin. Servs., L.P.*, No. 4:20-CV-01966, 2021 WL

5

4481089, at *4 (S.D. Tex. Sept. 30, 2021) (citing *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 169 (5th Cir. 2016) ("[E]motional harm satisfies the 'injury in fact' requirement of constitutional standing.")) (additional internal quotation marks omitted); *see also* Smith v. Moss Law Firm, P.C., No. 18-2449, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020) ("legal costs, anxiety, and worry" caused by defendant's alleged FDCPA violation were concrete and particularized injuries for purposes of FDCPA claim).

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

45. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 44 above as if fully set forth herein.

46. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

47. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

48. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

49. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

50. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 44 above as if fully set forth herein.

51. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

52. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 44 above as if fully set forth herein.

53. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Ohio Consumer Sales Practices Act

54. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 44 above as if fully set forth herein.

55. Defendant's actions in attempting to collect the alleged debt from Plaintiff as described above constitute a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A).

56. Defendant's actions and omissions described above constitute unfair, deceptive, and unconscionable acts and practices, in violation of Ohio Rev. Code § 1345.02 and the substantive rules promulgated under the OCSPA.

57. Defendant knowingly committed the unfair and unconscionable acts and practices described above.

## JURY DEMAND

58. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

59. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant under the OCSPA for treble damages, actual damages, non-economic damages, punitive damages and reasonable attorney's fees, witness fees, court costs, and other costs incurred by Plaintiff.

    c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: October 26, 2023

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq. (0079315)
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*